HUDSON BERGEN COUNTY RETAIL LIQUOR STORES AS-SOCIATION, RESPONDENT-APPELLANT, AND ALFRED E. DRISCOLL, STATE COMMISSIONER OF ALCOHOLIC BEVERAGE CONTROL, INTERVENING RESPONDENT-RESPONDENT, v. BOARD OF COMMISSIONERS OF THE CITY OF HOBOKEN, JOHN NOVAK, SOPHIE BROTMAN, EMIL PFEIFER, JOHN LENSI AND DANIEL G. MA-ROTTA, PROSECUTORS-RESPONDENTS.

HUDSON BERGEN COUNTY RETAIL LIQUOR STORES AS-SOCIATION, RESPONDENT-APPELLANT, AND ALFRED E. DRISCOLL, STATE COMMISSIONER OF ALCOHOLIC BEVERAGE CONTROL, INTERVENING RESPONDENT-RESPONDENT, v. BOARD OF COMMISSIONERS OF THE CITY OF HOBOKEN, AND SYDNEY GORDON AND LOUIS GORDON T/A GORDON BROTHERS, PROSECUTORS-RESPONDENTS.

ANGELO ANTHONY LUPO AND BOARD OF COMMISSIONERS OF THE CITY OF HOBOKEN, PROSECUTORS-RESPOND-ENTS, v. HUDSON BERGEN COUNTY RETAIL LIQUOR STORES ASSOCIATION, A CORPORATION OF THE STATE OF NEW JERSEY, RESPONDENT-APPELLANT, AND ALFRED E. DRISCOLL, COMMISSIONER OF THE STATE DEPARTMENT OF ALCOHOLIC BEVERAGE CON-TROL, RESPONDENT-RESPONDENT.

HUDSON BERGEN COUNTY RETAIL LIQUOR STORES AS-SOCIATION, DEFENDANT-APPELLANT, AND ALFRED E. DRISCOLL, STATE COMMISSIONER OF THE DEPART-MENT OF ALCOHOLIC BEVERAGE CONTROL, DEFEND-ANT-RESPONDENT, v. BOARD OF COMMISSIONERS OF THE CITY OF HOBOKEN AND CHARLES MARINELLI, PROSECUTORS-RESPONDENTS.

HUDSON BERGEN COUNTY RETAIL LIQUOR STORES AS-
SOCIATION, DEFENDANT-APPELLANT, AND ALFRED
E. DRISCOLL, STATE COMMISSIONER OF THE DEPART-
MENT OF ALCOHOLIC BEVERAGE CONTROL, DEFEND-
ANT-RESPONDENT, v. BOARD OF COMMISSIONERS OF
THE CITY OF HOBOKEN AND ROSE PIZZINO, PROSECU-
TORS-RESPONDENTS.

Argued February 5, 1947—Decided April 24, 1947.

For the respondent-appellant, Hudson Bergen County Retail Liquor Stores Association, *Fraser, Stoffer & Jacobs* (*Nathan L. Jacobs* and *Samuel Moskowitz*).

For Alfred E. Driscoll, State Commissioner of Alcoholic Beverage Control, *Walter D. Van Riper,* Attorney-General, and *Samuel B. Helfand,* Deputy Attorney-General.

For Board of Commissioners of the City of Hoboken, *John J. Fallon.*

For John Novak, Sophie Brotman, Emil Pfeifer, John Lensi, Daniel G. Marotta, Sydney Gordon and Louis Gordon, trading as Gordon Brothers, *Abraham J. Slurzberg* and *Joseph B. McFeely.*

For Angelo Anthony Lupo, *Anthony P. LaPorta.*

For Charles Marinelli and Rose Pizzino, *John F. Lynch, Jr., N. Louis Paladeau, Jr.,* and *Benedict A. Beronio.*

The opinion of the court was delivered by

CASE, CHIEF JUSTICE. This opinion is in the case of John Novak.

The Hudson Bergen County Retail Liquor Stores Association filed its petition of appeal with the State Commissioner of Alcoholic Beverage Control naming as respondents John Novak and the Board of Commissioners of the City of Hoboken. The petition alleged that on October 2d, 1945, the board had granted Novak's application for a plenary retail distribution license and had erred therein because the act was an abuse of discretion in that there were already "ample liquor outlets" to serve the needs of the neighborhood and of the city and that the granting of the licenses was socially undesirable. The board and Novak answered separately, admitting the granting of the license, otherwise denying the allegations

of the petition and setting up that the Board of Commissioners was vested with authority to issue the license and that the appellant filed the petition for the selfish purpose of unlawfully establishing a monopoly in itself and its members; and Novak added the allegation that the municipality had the authority to determine the number of licenses.

At the hearing *de novo* before the Commissioner the appellant put in proof tending to show that the City of Hoboken was "a mile square city," that in 1940 its population, according to census, was 50,000; that the number of licenses was 238 on August 1st, 1945, and that the granting of twelve additional licenses since that date brought the number to 250; that 250 licenses meant one license to every 200 of the population, including men, women and children, or, allowing a recognized deduction of forty per cent. of the total population for persons under twenty-one years of age and therefore not lawful patrons, a licensed place for every 120 adults; that although there had been an influx of workers due to war conditions these persons were mainly daily transients and not residents; that within approximately a two block radius of Novak's establishment there were twelve other licensed places; that all of the city licensees were members of the appellant organization and that the objection to the new licenses was that the city had reached the saturation point; that every municipality in Hudson County except Hoboken and all of the cities in the state comparable in size to Hoboken had limitation ordinances; that the number of licenses in Hoboken was at the lowest *per capita* of population in the state and that the resulting condition was "terrible." The respondents took no testimony.

The Commissioner correctly set up as his standard for decision that the issuance of retail liquor licenses in the first instance rested within the reasonable discretion of the local issuing authority, that in the absence of an abuse of such discretion the action of the authority in issuing licenses should not be disturbed and that, therefore, the question for determination by him was whether the respondent board had abused its discretion in granting the additional distribution licenses. He held that the issuing of liquor licenses without regard for

the paramount issue of public necessity and convenience constitutes an abuse of discretion, that the license in dispute had been so issued, that any presumption of validity of the act of the board in granting the application had been negatived by the ratio of licenses to population, that public necessity did not require the additional license, that the Board of Commissioners had "run riot" in the granting of licenses and that therefore the license involved herein, with other licenses, should be canceled. The matter went on writ of *certiorari* to the Supreme Court which held that Hudson Bergen County Retail Liquor Stores Association was not a taxpayer or an aggrieved person and was not found by the Commissioner to be such and therefore, inasmuch as the statutory appeal was given to "any taxpayer or other aggrieved person opposing the issuance of such license" (*R. S.* 33 :1–22), was not in position to take the appeal to the Commissioner, and, further, that the act of the board in granting the license was not such an abuse of discretion as warranted the revocation of the license. The original appellant now appeals from that judgment of the Supreme Court.

The sale of intoxicating liquor has from the earliest history of our state been dealt with by legislation in an exceptional way. In its legal significance it is *sui generis.* "It is a subject by itself, to the treatment of which all the analogies of the law, appropriate to other topics, cannot be applied." *Paul* v. *Gloucester County,* 50 *N. J. L.* 585, 595. "The sale of intoxicating liquor is in a class by itself." *Bumball* v. *Burnett,* 115 *Id.* 254. "The right to regulate the sale of intoxicating liquors by the legislature, or by municipal or other authority under legislative power given, is within the police power of the state, and is practically limitless. It may extend to the prohibition of the sale altogether. A license is not a contract. It is a mere privilege." *Meehan* v. *Excise Commissioners,* 73 *Id.* 382; *affirmed,* 75 *Id.* 557. "There is no inherent power in a citizen to sell intoxicating liquors by retail. It is not a privilege of a citizen of the state or of a citizen of the United States. As it is a business attended with danger to the community it may be entirely prohibited or be permitted under such conditions as will limit to the

utmost its evils." *Crowley* v. *Christensen,* 137 *U. S.* 86; 34 *L. Ed.* 620. "The liquor business is peculiarly subject to strict governmental control." *Franklin Stores Co.* v. *Burnett,* 120 *N. J. L.* 596.

The licensing tribunal is as the legislature may determine. Under VII Anne (Kinsey ch. XV) licenses were granted by "the Justices of the Peace in their Sessions or under the Hands and `Seals of two Justices of the Peace out of the Sessions, the one of them being of the *Quorum.*" By XII George II (Nevill ch. LX) the authority was limited to the justices in open session only. Under the act of February 24th, 1797, it was in the Court of General Quarter Sessions. *Pat. p.* 235. By the Inns and Taverns Act of 1846 (*Rev., p.* 577; 3 *Comp. Stat., p.* 2890) it was in the Court of Common Pleas. Subject to the diversion of the power from time to time to one and another class of municipalities, the Court of Common Pleas remained the basic licensing body until the repealer of 1934 (chapter 32, *Pamph. L.* 1934) which dovetailed with the present Alcoholic Beverage Control Act, chapter 436, *Pamph. L.* 1933. Both statutes became operative upon the repeal of national prohibition. By *R. S.* 33:1–21, the Court of Common Pleas was the issuing authority in sixth class counties until the repealer of 1942 (chapter 159, *Pamph. L.* 1942). There is no merit in the contention that the authority to issue or control licenses must, constitutionally, be placed within the municipality.

It is contended that the authority which the Commissioner undertook to exercise is contrary to article 4, section 7, paragraph 11 of the state constitution which provides that the legislature shall not pass local or special laws regulating the internal affairs of towns and counties, and that the legislature shall pass general laws in such instances. The constitutional injunction is against certain enactments by the legislature. We are pointed to no part of the statute which may fairly be called private, local or special. The statute applies generally throughout the state.

The reason and the need for singling out the liquor traffic for peculiar limitation and strict supervision may be read in our statutes from early colonial times. Chapter XV,

Kinsey, passed March-April, 1709, VII Anne, the first licensing statute appearing in our compilations, contained this: "Forasmuch as there are great Exorbitances observeable in many Places within this Province, occasioned by Persons selling Drink in private Houses, to the Dishonour of God and impoverishing of the Common wealth," therefore no one should sell except under the conditions named, one of which was having a license. So, chapter LXXVIII, Kinsey, in the Fifth of King George, provided that "whereas it is evident that many Persons in this Province do spend their Time and Waste their Substance by frequenting Taverns and Tippling Houses to the great detriment of themselves and their Families" therefore no tavern keeper might recover for a credit of more than 10 Shillings. The statute of March 15th, 1738-9, XII George II, Allinson, chapter CLVIII, recited that "Whereas the true and original Design of Taverns, Inns and Ordinaries, was for the accommodating Strangers, Travellers, and other Persons, for the Benefit of Men's Meeting together for the Dispatch of Business, and for the entertaining and refreshing Mankind in a reasonable Manner, and not for the Encouragement of Gaming, Tippling, Drunkenness, and other Vices so much of late practiced at such Places, to the great Scandal of Religion, the Dishonour of God, and impoverishing the Common Wealth: And Whereas the present prescribed Methods of granting Licenses for the Purposes aforesaid are insufficient to obtain the Benefits hoped for:" therefore the licensing restrictions should be tightened. VIII George III A. D. 1768, Allinson, chapter CCCCLXXII, imposes still further limitations "For regulating Taverns, so as to make them answer the End of their Institution, and more effectually to prevent their being perverted to Places of Gaming, Tippling, Drunkenness, Revellings, Extortion and other Vices." For added examples, since the turn of the last century, see the so-called Bishop's bill (chapter 114, *Pamph. L.* 1906), the Local Option Act of 1918 (chapters 2 and 3, *Pamph. L.* 1918), and the State Prohibition Act of 1920 (chapter 3, *Pamph. L.* 1920). Following came national prohibition, on the repeal of which our legislature adopted the present Alcoholic Beverage Act. Thus, through nearly

250 years the legislature has struggled with the conditions arising out of the sale of liquor. The current statute is to be construed in the light of the long series of statutes of which it is the culmination and of the decisions of the courts regarding those statutes. Meticulous technicalities should not be permitted to thwart so considerable an effort toward keeping a public convenience from becoming a social evil. The state authorities should be given every reasonable opportunity to work out the mandate of the legislature. *Matthews* v. *Asbury Park*, 113 *N. J. L.* 205.

The Commissioner is himself, with respect to numerous grades of licenses, the issuing authority (*R. S.* 33:1–18). As to other licenses, the appropriate municipal body, referred to in the statute as the "other issuing authority" (*R. S.* 33:1–19), initially passes on the application, and from the determination of that body, whether to grant or to refuse, there is an appeal to the Commissioner. Not only has the Commissioner authority in the issuing of licenses, original as to some, appellate as to others; he is burdened with the duty of administering and enforcing the statute and of taking all "acts, procedures and methods designed to insure the fair, impartial, stringent and comprehensive administration" of the statute (*R. S.* 33:1–23); he is given authority to make both general and special rules and regulations for the proper regulation and control of the manufacture, sale and distribution of alcoholic beverages generally and with specific reference to many enumerated subjects, *inter alia* "unfair competition" and "instructions for municipalities and municipal boards" (*R. S.* 33:1–39); he is directed "to supervise the manufacture, distribution and sale of alcoholic beverages in such a manner as to promote temperance and eliminate the racketeer and bootlegger" (*R. S.* 33:1–3); he is authorized, after the hearing on an appeal, "to make all findings, rulings, decisions and orders as may be right and proper and *consonant with the spirit* of this chapter" (*R. S.* 33:1–38). Finally, we have the legislative mandate that "This chapter is intended to be remedial of abuses inherent in liquor traffic, and shall be liberally construed." (*R. S.* 33:1–73.)

Having regard for the exceptional treatment long accorded the sale of intoxicating liquor and for the varied and extensive expressions of authority in the statute, we conclude that the Commissioner has powers of supervision and control which set him apart from a formal appellate tribunal and that his jurisdiction to entertain an appeal from the action of the other issuing tribunals, where the public good is concerned, is not to be shorn by judicially imposed procedural limitations which are technical rather than substantial.

The statute provides (*R. S.* 33:1–1(r)) that for the purpose of the act the word "person" means "any natural person or association of natural persons, association, trust company, partnership, corporation, organization, or the manager, agent, servant, officer, or employee of any of them." Appellant is a person, and the licensees who constitute its membership are persons, within the application of the statute. We think that the earlier licensees, whether alone or through the appellant organization, were sufficiently interested in the subject-matter to constitute them "aggrieved" persons within the meaning of this statute and that inasmuch as the purpose of their organization is to regulate and control the liquor traffic their effort and the effort of their association to that end and to the present extent are in harmony with the objective of the statute. The "controversy relates to a matter of public policy of · universally recognized importance concerning a traffic which, in the opinion of many, largely adds to the disorders of society and the burdens of taxation." (The language is that of Mr. Justice Dixon in *Ferry* v. *Williams*, 41 *N. J. L.* 332, 339). It takes but slight private interest, added to and harmonizing with the general public interest, to invoke intervention by the Commissioner. The interest of the appellant herein was sufficient and was sufficiently manifested. Such pecuniary advantage, if any, as may come to the appellant from the limitation of licenses is incidental to the major question of public morals and general welfare, and the possibility that appellant may reap some personal advantage from the result does not nullify the main quest.

It is argued that the questions whether or not the appellant was an "aggrieved person" and whether or not there was an

abuse of discretion by the Commissioner were questions of fact and that we are therefore forestalled by the findings of the Supreme Court thereon. Not so. Both were questions of law. The facts are not in dispute. The Supreme Court made no findings of fact. The facts being as they were—and are—the Supreme Court drew the legal conclusion that the appellant was not thereon to be considered an aggrieved person under the statute. We draw the opposite conclusion. So, too, the finding by the Commissioner that the board had, upon the admitted facts, committed an abuse of discretion, was a finding that the act of the board was clearly against the logic and effect of the presented facts. Matters resting in discretion are not, in general, subject to review on appeal, unless an abuse of discretion is shown, *Martin* v. *Lehigh Valley Railroad Co.*, 114 *N. J. L.* 243, but where the abuse becomes a ground of reversal, it is, even when committed by a court of record, legal error. The Supreme Court considered that the admitted act of the board was not an improvident exercise of its discretion. That finding was a conclusion of law, and we disagree.

It is also said that because the city had not passed an ordinance, as it was empowered to do under *R. S.* 33:1–40, limiting the number of licenses for the selling of alcoholic beverages at retail the Commissioner could not revoke a license on the ground that there were too many licensed places; but even where a city has passed such an ordinance the Commissioner may keep the number below that fixed by the ordinance, when the circumstances justify. *Phillipsburg* v. *Burnett*, 125 *N. J. L.* 157.

The statute is a comprehensive revision of the law relating to alcoholic beverages. It covers the entire industry from manufacture, blending and storage to transportation and sale at both wholesale and retail. No one part of the statute is to be preferred above another except as the provisions and intent of the statute require. The authority of a municipal board, within its field, to issue a license has no greater dignity than the authority of the Commissioner within his field to review the issuing of the license.

We conclude that the Commissioner was within his authority in assuming to act and that his finding was upon sound premises.

The judgment of the Supreme Court is reversed and the order of the Commissioner of Alcoholic Beverage Control is affirmed.

The numerous other cases entitled as above do not differ. sufficiently in principle to require separate opinions. They will follow the same course.

*For affirmance*—None.

*For reversal*—THE CHIEF JUSTICE, BODINE, HEHER, COLIE, WACHENFELD, EASTWOOD, WELLS, RAFFERTY, DILL, FREUND, McGEEHAN, McLEAN, JJ. 12.