892 A.2d 728

THE MEDICAL SOCIETY OF NEW JERSEY, PLAINTIFF–APPEL-
LANT, v. THE HONORABLE HOLLY C. BAKKE, IN HER OFFI-
CIAL CAPACITY AS COMMISSIONER OF THE STATE OF NEW
JERSEY'S DEPARTMENT OF BANKING AND INSURANCE;
THE HONORABLE CLIFTON R. LACY, M.D., IN HIS OFFICIAL
CAPACITY AS COMMISSIONER OF THE STATE OF NEW JER-
SEY'S DEPARTMENT OF HEALTH AND SENIOR SERVICES;
THE STATE OF NEW JERSEY; AND UNITED HEALTHCARE,
INC., DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued September 20, 2005—Decided March 6, 2006.

500

Before Judges SKILLMAN, PAYNE and FRANCIS.

*Steven I. Kern* argued the cause for appellant (*Kern Augustine Conroy & Schoppmann,* attorneys; *Mr. Kern* and *Robert J. Conroy,* of counsel and on the brief).

*Karyn G. Gordon,* Deputy Attorney General, argued the cause for respondents New Jersey Department of Banking and Insurance and New Jersey Department of Health and Senior Services (*Peter C. Harvey,* Attorney General, attorney; *Patrick DeAlmeida,* Assistant Attorney General, of counsel; *Ms. Gordon,* on the brief).

*Samuel Kadet* argued the cause for respondent United Healthcare, Inc. (*Skadden, Arps, Slate, Meagher & Flom,* attorneys; *Mr. Kadet, Lauren Aguiar* and *Andrew Muscato,* on the brief).

The opinion of the court was delivered by

SKILLMAN, P.J.A.D.

The Medical Society of New Jersey appeals a final decision of the Commissioner of Banking and Insurance approving the acquisition of a health care insurance provider by another health care insurance provider. The primary issues are whether the Medical Society has standing to challenge the Commissioner's approval, and if it does, whether the Society is entitled to pursue its challenge by a trial de novo in the Law Division.

We conclude the Medical Society has standing to challenge the Commissioner's approval of the acquisition. However, the Society is only entitled to appellate review of the Commissioner's findings of fact and conclusions of law, not a trial de novo in the Law Division. We also conclude that the Commissioner's findings are supported by substantial credible evidence and that those findings warranted approval of the acquisition. Therefore, we affirm the Commissioner's final decision.

Respondent United Healthcare is a Minnesota health care insurance provider that affords coverage through subsidiaries to approximately fifty-two million people nationwide. The target of United's acquisition is Oxford Health Plans, Inc., a Delaware corporation whose subsidiaries provide health coverage to more than 1.5 million people, primarily in Connecticut, New Jersey, Pennsylvania, Delaware, Rhode Island, and New York.

United's plan to acquire control of Oxford was announced in April 2004. This announcement sparked an investigation by the Antitrust Division of the United States Department of Justice into "the proposed merger's potential effects on the sale of health insurance products by insurance plans and on the purchase of health care provider services." Upon completion of its investigation in July 2004, the Justice Department concluded that the combined companies would have a maximum market share of thirty percent and "should not substantially lessen competition in any relevant market." It also concluded that the combined entity would have only limited negotiating leverage with health care

providers. Therefore, the Justice Department allowed the acquisition to proceed.

United was also required to obtain approval of the acquisition by insurance company regulators in New York, Connecticut, California, and New Jersey. Consequently, in May 2004, United filed an application with the New Jersey Department of Banking and Insurance for approval of the acquisition. The Department held a hearing regarding the acquisition at which testimony and documentary evidence was presented by United, Oxford, the Department, and appellant Medical Society of New Jersey, an association of New Jersey physicians.

On July 29, 2004, the hearing officer issued a report recommending approval of the acquisition. On that same day, the Commissioner issued an order accepting the hearing officer's recommendation. United's proposed acquisition of Oxford also was approved by the regulatory officials in the three other states requiring such approvals.

After the Commissioner approved the acquisition, the Medical Society filed an action in the Law Division challenging the decision. In bringing its action in the Law Division, the Medical Society relied upon *N.J.S.A.* 17:27A–12(a), which provides that "[a]ny person aggrieved" by an order of the Commissioner approving the acquisition of an insurance company "may appeal therefrom to the Superior Court[,] ... [which] shall conduct its review ... by trial de novo[.]"

United filed a motion to dismiss the action on the ground that the Medical Society is not a "person aggrieved" by the Commissioner's decision within the intent of *N.J.S.A.* 17:27A–12(a) and therefore lacks standing to challenge that decision. United also argued that the Law Division does not have jurisdiction to review the Commissioner's decision.

The Law Division concluded in a written opinion that the Medical Society's challenge to the Commissioner's approval of the acquisition is within the Appellate Division's exclusive jurisdiction

to review any final decision of a state administrative agency. *See* *R.* 2:2–3(a)(2). Accordingly, the Law Division transferred the case to this court without ruling on any of the substantive issues presented by United's motion to dismiss.

After the transfer, the Medical Society moved to transfer the case back to the Law Division. United filed a cross-motion to dismiss the appeal. We denied both motions. During the pendency of this action, United's acquisition of Oxford was consummated.

## I

At oral argument, the court questioned whether the Medical Society's challenge to United's acquisition of Oxford had been mooted by completion of the acquisition. The Medical Society argued that its challenge is not moot because the court could order United to divest Oxford or grant other relief to mitigate the alleged anti-competitive effects of the acquisition if it concluded that the Commissioner's approval had been erroneous. United did not dispute the Medical Society's claim that its challenge to the acquisition is not moot. Therefore, we proceed to consideration of the merits.

## II

The threshold issue presented by this appeal is whether the Medical Society has standing to obtain judicial review of the Commissioner's approval of United's acquisition of Oxford. The Medical Society presents two alternative arguments to support its claim that it has standing. First, the Medical Society argues that it is a "person aggrieved" within the intent of *N.J.S.A.* 17:27A–12(a), and therefore, it has a statutory right to challenge the Commissioner's approval. Second, the Medical Society argues that it has a right under the New Jersey Constitution to judicial review of that approval.

We conclude for the reasons set forth in section III of this opinion that the Medical Society is not a "person aggrieved" within the intent of *N.J.S.A.* 17:27A–12(a). However, we conclude that the Medical Society is entitled to judicial review of the Commissioner's approval of United's acquisition of Oxford under Article VI, section 5, paragraph 4, of the New Jersey Constitution.

This constitutional provision states in pertinent part:

> Prerogative writs are superseded and, in lieu thereof, review, hearing and relief shall be afforded in the Superior Court, on terms and in the manner provided by rules of the Supreme Court, as of right. . . .

Under this provision, our courts have held that "in cases involving substantial public interest, [even a] 'slight private interest, added to and harmonizing with the public interest' is sufficient to give standing." *Elizabeth Fed. Sav. & Loan Ass'n v. Howell*, 24 *N.J.* 488, 499, 132 *A.*2d 779 (1957) (quoting *Hudson Bergen County Retail Liquor Stores Ass'n v. Bd. of Comm'rs of Hoboken*, 135 *N.J.L.* 502, 510, 52 *A.*2d 668 (E. & A.1947)). "[T]his right to seek judicial review of administrative decisions inheres not only in those who are direct parties to the initial proceedings before an administrative agency[,] . . . but also belongs to all persons who are directly affected by and aggrieved as a result of the particular action sought to be brought before the courts for review." *Id.* at 499–500, 132 *A.*2d 779.

An adverse financial impact from proposed agency action has long been recognized as a private interest that confers standing to obtain judicial review. *See, e.g., In re Camden County*, 170 *N.J.* 439, 446–49, 790 *A.*2d 158 (2002); *Elizabeth Fed. Sav. & Loan Ass'n, supra*, 24 *N.J.* at 501–04, 132 *A.*2d 779; *Al Walker, Inc. v. Borough of Stanhope*, 23 *N.J.* 657, 661–66, 130 *A.*2d 372 (1957). Moreover, an association of individuals who allegedly have suffered financial harm as a result of agency action has standing to assert a claim on their behalf. *N.J. Builders Ass'n v. Bernards Twp.*, 108 *N.J.* 223, 227, 528 *A.*2d 555 (1987); *Am. Trial Lawyers Ass'n v. N.J. Supreme Court*, 66 *N.J.* 258, 260, 330 *A.*2d 350 (1974); *Crescent Park Tenants Ass'n v. Realty Equities Corp. of*

N.Y., 58 *N.J.* 98, 108–12, 275 *A.*2d 433 (1971); *see also Hunt v. Washington State Apple Adver. Comm'n,* 432 *U.S.* 333, 342–44, 97 *S.Ct.* 2434, 2441–42, 53 *L.Ed.*2d 383, 393–94 (1977).

Under these liberal standing rules, the Medical Society has shown a sufficient stake in the Commissioner's approval of United's acquisition of Oxford to have standing to obtain judicial review. The expert report that the Medical Society submitted to the Department states in part:

> The likely impact of the proposed acquisition would be . . . additional action by the combined entity to further reduce physician compensation while denying contractually committed payments for medically necessary procedures by using claims processing and pattern recognition software that denies payment without any clinical justification.
>
> . . . .
>
> The Noether Report cites a number of justifications for the proposed acquisition in the nature of purported economies or efficiencies that will result. These justifications are primarily attributable to reductions in provider reimbursement (in the range of $40 to $50 million). Rather than constituting an economic efficiency, such reductions would admittedly result from the raw exercise of market power in order to reduce payment to hospitals and physicians.

Thus, this expert report provides some evidence that United's acquisition of Oxford will have an adverse impact upon physicians' income. Under *Crescent Park Tenants' Ass'n, supra,* this is a sufficient private interest in the Commissioner's approval to confer standing upon the Medical Society, as an association representing physicians, to challenge this agency action.

Moreover, there are obvious public interests in the acquisition, particularly those of Oxford's policyholders, and the Medical Society appears to be the only party in a position to challenge the approval. *See Indep. Energy Producers of N.J. v. N.J. Dep't of Envtl. Prot.,* 275 *N.J.Super.* 46, 56, 645 *A.*2d 166 (App.Div.), *certif. denied,* 139 *N.J.* 187, 652 *A.*2d 175 (1994) (noting that parties with a direct financial interest in agency action may be the only ones "with sufficient private interest in harmony with the public concern of the consumer" to challenge that action). Therefore, the Medical Society has standing to pursue this appeal.

## III

■ We next consider the Medical Society's argument that it is entitled to a trial de novo in the Law Division on its claim that the Commissioner erred in approving United's acquisition of Oxford. This argument is based on *N.J.S.A.* 17:27A–12(a), which states:

> Any person aggrieved by any act, determination, rule, regulation, or order or any other action of the commissioner pursuant to this chapter may appeal therefrom to the Superior Court. *The court shall conduct its review* without a jury and *by trial de novo,* except that if all parties, including the commissioner, so stipulate, the review shall be confined to the record. Portions of the record may be introduced by stipulation into evidence in a trial de novo as to those parties so stipulating. [Emphasis added.]

The Medical Society argues that the same alleged adverse financial impact of the acquisition upon its members that gives the Society standing to obtain judicial review also makes the Society a "person aggrieved" within the intent of *N.J.S.A.* 17:27A–12(a).

Respondents argue that the Medical Society does not have a sufficiently direct and immediate financial interest in the approval of the acquisition to qualify as a "person aggrieved." In addition, United argues that the legislative directive that the Commissioner's final decision be reviewed by a "trial de novo" violates the principle of separation of powers embodied in Article III of the New Jersey Constitution. In support of this argument, United relies upon decisions in other states holding that statutory provisions for de novo review of agency action violated the separation of powers clauses of those states' constitutions. *See, e.g., St. Paul Cos. v. Hatch,* 449 *N.W.*2d 130, 134–37 (Minn.1989); *Bentley v. Chastain,* 242 *Ga.* 348, 249 *S.E.*2d 38, 40–41 (1978).

We conclude that the Medical Society is not a "person aggrieved" by United's acquisition of Oxford within the intent of *N.J.S.A.* 17:27A–12(a). Therefore, there is no need to address United's constitutional argument.

*N.J.S.A.* 17:27A–12(a) is the judicial review section of New Jersey's statute governing insurance holding company systems, which was enacted in 1970. *L.* 1970, *c.* 22. This statute tracks almost verbatim the language of the "Model Insurance Holding

Company System Regulatory Act" proposed by the National Association of Insurance Commissioners (NAIC) in 1969 and subsequently adopted by nearly every state legislature. Nat'l Ass'n of Ins. Comm'rs, *Proceedings of the Nat'l Ass'n of Ins. Comm'rs,* 2 *NAIC Proc.* 737, 737–51 (1969); *see Alleghany Corp. v. McCartney,* 896 *F.*2d 1138, 1140 (8th Cir.1990) (noting that forty-eight states have insurance holding company statutes patterned after the Model Act). This model legislation was derived in part from amendments to the NAIC's original draft model bill suggested by an industry advisory committee. Nat'l Ass'n of Ins. Comm'rs, *supra,* 2 *NAIC Proc.* at 737. Although the language of *N.J.S.A.* 17:27A–12(a) was not included in the model bill originally proposed by the NAIC in 1968, *see* Nat'l Ass'n of Ins. Comm'rs, *supra,* 1 *NAIC Proc.* at 171–208, it is unclear from the limited history of the NAIC proceedings available to us whether this judicial review provision was one of the amendments suggested by the industry advisory committee. *N.J.S.A.* 17:27A–12(a) has not been interpreted in any reported opinion in this State.

The only case we have located interpreting a comparable provi· sion in the insurance holding company systems regulatory statute of another state is *Nader v. Altermatt,* 166 *Conn.* 43, 347 *A.*2d 89, 94 (1974), which held that to be considered an "aggrieved party" within the intent of Connecticut's analogue to *N.J.S.A.* 17:27A– 12(a), a party must (1) "successfully demonstrate a specific, personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole[,]" and (2) "must successfully establish that this specific personal and legal ·interest has been specially and injuriously affected by the decision." Applying this test, the court concluded that a policyholder of an insurance company being acquired by another insurance company was not an "aggrieved party" entitled to challenge the Insurance Commissioner's approval of the acquisition. *Id.* at 97–98. In reaching this conclusion, the court stated that the policyholder's expressed concern that the acquiring company might change the terms of his coverage, or stop offering it, was speculative and that "[m]ere

generalizations and fears are not sufficient to establish aggrievement." *Id.* at 98.

■ The decisions in other jurisdictions interpreting uniform or model state legislation should be considered in interpreting New Jersey's version of such legislation. *See Cohen v. Southbridge Park, Inc.,* 369 *N.J.Super.* 156, 162, 848 *A.*2d 781 (App.Div.2004). Following the narrow interpretation of Connecticut's version of *N.J.S.A.* 17:27A–12(a) adopted in *Nader,* we conclude that the term "person aggrieved" in this section should be interpreted more narrowly than the liberal party standing rules governing judicial review of agency action discussed in section II of this opinion.

The Medical Society does not allege that it will suffer any direct financial or other injury as a result of United's acquisition of Oxford. The only adverse consequence of the acquisition it alleges is a possible decrease in the fees paid to its members who formerly contracted with Oxford. Moreover, even those adverse consequences are conjectural. It is undisputed that United will honor Oxford's contractual obligations to the Medical Society's members during the terms of their current contracts, and Oxford could have negotiated for the payment of lower fees to the Society's members at the end of their current contracts even if Oxford had not been acquired by United. Although the combined insurance companies will have a larger market share than either company alone, the Medical Society's expressed concern that the combined company may be able to negotiate for lower fees than Oxford could have negotiated by itself is speculative. Therefore, the adverse financial consequences the Medical Society posits its members will suffer as a result of United's acquisition of Oxford are too indirect and attenuated for the Medical Society to be considered a "person aggrieved" within the intent of *N.J.S.A.* 17:27A–12(a).

This conclusion is supported by several other considerations. First, if the Medical Society were held to be a "person aggrieved" within the intent of *N.J.S.A.* 17:27A–12(a), its challenge to the

acquisition would result in an automatic stay of approval of the acquisition pending a final decision on the appeal "unless the court ... determine[d] that such a stay would be detrimental to the interests of policyholders, shareholders, creditors or to the public." *N.J.S.A.* 17:27A–12(b). Under this stay provision, a party challenging the Commissioner's approval is not required to show a probability of success, which is one of the primary criteria that ordinarily governs an appellate court's consideration of a motion. for stay pending appeal. *See Avila v. Retailers & Mfrs. Distrib.,* 355 *N.J.Super.* 350, 354, 810 *A.2d* 585 (App.Div.2002), *certif. denied,* 176 *N.J.* 74, 819 *A.2d* 1189 (2003). We do not believe our Legislature could have intended to relieve a party with only an indirect and attenuated interest in the acquisition of an insurance company of the burden of making this showing, which prevents a party from filing an appeal for the sole purpose of delaying implementation of an agency decision.

Second, a requirement that an appeal from an order of the Commissioner be decided by a "trial de novo" is contrary to firmly established principles of administrative law, which ordinarily confine judicial review of agency action to determining:

(1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency bases its action; and (3) whether, in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.

[*In re Musick,* 143 *N.J.* 206, 216, 670 *A.2d* 11 (1996).]

Without deciding whether these standards of limited judicial review are of constitutional dimension and therefore may not be expanded by legislative enactment, we are satisfied that our Legislature could not have intended the substantial departure from ordinary principles of appellate review reflected in *N.J.S.A.* 17:27A–12(a) to apply to a party with only the Medical Society's limited and attenuated interest in United's acquisition of Oxford.

## IV

Under ordinary principles of appellate review, an administrative agency's decision is entitled to a presumption of correct-

ness, *Musick, supra,* 143 *N.J.* at 216–17, 670 *A.*2d 11, which may be overcome only by a showing that the agency's factual findings are not supported by substantial credible evidence in the record, *Jackson v. Concord Co.,* 54 *N.J.* 113, 117–18, 253 *A.*2d 793 (1969), or that the agency's policy judgments are arbitrary or unreasonable, *In re Distribution of Liquid Assets of Union County Reg. High Sch. Dist. No. 1,* 168 *N.J.* 1, 10–11, 773 *A.*2d 6 (2001). A court should extend particular deference to an agency decision that rests upon factual findings or policy judgments that involve technical matters within the special expertise of the agency. *See Campbell v. N.J. Racing Comm'n,* 169 *N.J.* 579, 588, 781 *A.*2d 1035 (2001); *Greenwood v. State Police Training Ctr.,* 127 *N.J.* 500, 513, 606 *A.*2d 336 (1992). The Commissioner of Banking and Insurance is recognized to have such expertise in the field of insurance, including the structure and organization of insurance companies. *See In re Application of Ins. Rating Bd.,* 63 *N.J.* 413, 418, 307 *A.*2d 604 (1973); *In re Reorganization of the Med. Inter–Insurance Exch. of N.J.,* 328 *N.J.Super.* 344, 354, 746 *A.*2d 25 (App.Div.), *certif. denied,* 165 *N.J.* 530, 760 *A.*2d 784 (2000).

■ New Jersey's insurance holding company systems statute confers authority upon the Commissioner to approve any acquisition of a domestic insurance company. *N.J.S.A.* 17:27A–2(d)(1) provides that the Commissioner "shall" approve the acquisition unless he or she finds that one or more of the seven criteria for disapproval set forth in *N.J.S.A.* 17:27–2(d)(1)(i) to (vii) have been established. The Commissioner found, after a hearing on United's acquisition of Oxford, that none of these criteria for disapproval had been established.

The only one of the Commissioner's findings challenged on this appeal is that the Medical Society failed to establish the criteria for disapproval set forth in *N.J.S.A.* 17:27A–2(d)(1)(ii). This subsection provides that the Commissioner shall disapprove the acquisition of an insurance company if "he finds that ... [t]he effect of the ... acquisition of control would be substantially to lessen competition in insurance in this State or tend to create a monopoly

therein." Even if the Commissioner finds that the acquisition would have such an anti-competitive effect, *N.J.S.A.* 17:27A–2(d)(1)(ii)(b) provides that the acquisition "shall not be disapproved if ... any of the situations meeting the criteria provided by [*N.J.S.A.* 17:27A–4.1(d)(3) ] exist." One criteria for approval of an acquisition, notwithstanding its anti-competitive effects, is a showing that "[t]he acquisition will yield substantial economies of scale or economies in resource utilization that cannot be feasibly achieved in any other way, and the public benefits which would arise from those economies exceed the public benefits which would arise from not lessening competition." *N.J.S.A.* 17:27A–4.1(d)(3)(a).

The Commissioner found that "[t]he acquisition will yield substantial economies of scale or economies in resource utilization that cannot be feasibly achieved in any other way, and the public benefits which would arise from those economies exceed the public benefits which would arise from not lessening competition." *N.J.S.A.* 17:27A–4.1(d)(3)(a). Extending due deference to the Commissioner's expertise in the technical subject matter of this appeal, we conclude that there is substantial evidence to support this Commissioner's finding. In reaching this conclusion, we rely primarily upon the analysis set forth in the hearing officer's decision adopted by the Commissioner. We also note that even after its acquisition of Oxford, United will be only the third largest commercial health insurer in New Jersey, with 16% of the market. Moreover, the record indicates that expansion of market share by smaller commercial health insurers and entry into the market by new companies is relatively easy. Accordingly, we affirm the Commissioner's approval of the acquisition.

Affirmed.