LSB INDUSTRIES, INC., Summit Machine Tool Mfg. Corp., and Hercules Energy Mfg. Corp., Plaintiffs-Appellees,

v.

PRUDENTIAL LINES, INC., Defendant-Appellant.

No. 512, Docket 83–7627.

United States Court of Appeals, Second Circuit.

Argued Jan. 16, 1984.

Decided May 23, 1984.

David Simon, New York City (Barrett, Smith, Schapiro, Simon & Armstrong, and Dave S. Hattem, New York City, of counsel), for defendant-appellant.

John J. O'Connell, New York City (Webster & Sheffield, Donald J. Cohn and Mark Windfeld-Hansen, New York City, of counsel), for plaintiffs-appellees.

Before FEINBERG, Chief Judge, and VAN GRAAFEILAND and KEARSE, Circuit Judges.

## VAN GRAAFEILAND, Circuit Judge:

This is an appeal from a judgment of the United States District Court for the Southern District of New York which followed a bench trial before Chief Judge Motley and which awarded damages for freight overcharges to LSB Industries, Inc. and two wholly owned subsidiaries (hereafter "LSB"). Appellant, Prudential Lines, Inc. ("PLI"), contends that the district court erroneously interpreted the applicable tariff. We affirm.

In early 1980, LSB, a distributor of oilfield machinery, and PLI, a maritime carrier flying the American flag, began negotia-

tions for the shipment of LSB machinery from Constanza, Romania to Charleston, South Carolina. During these negotiations, the parties discussed possible rates for shipments on PLI's LASH (lighter-aboard-ship) vessels, which transport pre-loaded barges of 500 or 550 cubic meters capacity. On April 1, 1980, the parties agreed upon two rates, a weight/measure rate which would be applicable if the LASH barges were not loaded fully, and a lump sum rate for fully loaded LASH barges.

Thereafter, PLI amended the tariff it had on file with the Federal Maritime Commission, *see* 46 U.S.C. § 817(b), to reflect the foregoing agreement. The amended tariff provided, in part: [1]

| Commodity Description and Packaging | Rate Basis | Rate |
|---|---|---|
| Machinery, N.O.S. | W/M | 40.75 F.I. |
| Machinery, N.O.S. —20' Cont. | L.S. | 1,050.00 |
| —40' Cont. | L.S. | 2,205.00 |
| In Full LASH Barges | Lump Sum | 22,000.00 |

Although the tariff was amended later to reflect a raise in the shipping rates and to attribute loading responsibility to LSB for shipments in full barges, the terms of the tariff were not otherwise affected.

Between April 5, 1980 and July 31, 1981, LSB made eighteen separate shipments. For the first seven, PLI charged LSB the cubic meter "Machinery, N.O.S." rate. However, for the last eleven voyages, LSB was charged the lump sum rate for "Full LASH Barges" even though the PLI barges were not filled with 500 or 550 cubic meters of machinery. PLI explained to LSB that the lump sum rate was proper according to the tariff and the agreement between the parties and that the cubic meter rate had been charged for the first voyages through error.[2] LSB paid the amount charged and then filed suit, seeking a refund for the difference between the rate charged and the cubic meter rate.

---

1. "N.O.S." means not otherwise specified. "W/M" reflects that the rate was based on the weight or measure of the cargo. "Cont." means container. "L.S." is lump sum. "F.I." stands for free in, which means the shipper has the responsibility for loading the barge.

2. PLI also charged LSB a third rate on some of the later voyages. Explained by PLI as a "partial lump sum full barge rate," LSB was charged a pro rated portion of the lump sum rate when LSB machinery and LSB's subsidiary's goods were shipped together. The combined goods apparently did not fill the LASH barges to any greater extent than the LSB-only shipments.

■ Before trial, PLI moved for dismissal of the complaint, contending that the issues raised were within the exclusive jurisdiction of the Federal Maritime Commission. The district court properly denied PLI's motion. The issue before the district court basically was what constitutes a "full" barge. This issue did not involve reasonableness of rates, interpretation of technical terms, or other matters calling for FMC expertise. *See United States Navigation Co. v. Cunard Steamship Co.*, 284 U.S. 474, 482, 52 S.Ct. 247, 249, 76 L.Ed. 408 (1932). Indeed, the district court's task was not significantly different from that of contract interpretation, *Penn Central Co. v. General Mills, Inc.*, 439 F.2d 1338, 1340 (8th Cir.1971), a matter well within the competence of the courts. *See Norfolk & Western Ry. Co. v. B.I. Holser & Co.*, 629 F.2d 486, 488–89 (7th Cir.1980); *Holt Marine Terminal, Inc. v. United States Lines*, 472 F.Supp. 487, 488–89 (S.D.N.Y.1978).

LSB contended that the "Full LASH Barges" rate was inapplicable unless the 500 or 550 cubic meter barges were loaded with 500 or 550 cubic meters of machinery. PLI, on the other hand, argued that the "Full LASH Barges" rate was applicable to all LSB shipments because LSB assumed the responsibility for loading, and whole barges were made available so that LSB could load as much in each as it deemed advisable. PLI also introduced evidence tending to show that it was impossible to load a barge with 500 or 550 cubic meters of bulky, unsymmetrical machinery and that 200 to 300 cubic meters of machinery effectively would fill a barge. The district court adopted LSB's interpretation of the tariff, awarding LSB $764,994.27 and interest.

■ A third interpretation of the tariff was suggested by PLI to the district court in a motion for a new trial and is the theory most vigorously argued by PLI on appeal. Under this theory, the "Full LASH Barges" rate had to be applied whenever the barges were effectively full. Asserting an industry practice to this effect, PLI contends that a barge is full when no more of the goods being shipped can be loaded safely into the barge, which in the case of machinery is only 200 to 300 cubic meters. Because the district court denied PLI's motion on the ground that it failed to raise anything the court had overlooked and because a carrier cannot avoid its obligation to charge the rates prescribed by the tariff, *see United States v. Associated Air Transp., Inc.*, 275 F.2d 827, 833–34 (5th Cir.1960), our review of the district court's decision takes into account this rather tardy theory.

■ In interpreting the tariff, the district court placed primary reliance on the agreement between the parties and parol evidence relating thereto. Indeed, appellant contends that the district court relied too heavily on the agreement in deciding the case. Subject to certain irrelevant exceptions, PLI was bound to charge the rates set forth in its tariff, and nothing in the contract between PLI and LSB could relieve PLI of that obligation. 46 U.S.C. § 817(b)(3). *Western Transp. Co. v. E.I. Du Pont de Nemours & Co.*, 682 F.2d 1233, 1235 (7th Cir.1982); *Brown & Root, Inc. v. M/V Peisander*, 648 F.2d 415, 421 & n. 14 (5th Cir.1981); *United States v. Associated Air Transp., Inc., supra*, 275 F.2d at 833. The question before the district court, therefore, was the meaning of "Full LASH Barges" as used in the tariff; the agreement of the parties simply aided in the interpretation of that term.

■ The two interpretations of "Full LASH Barges" proposed during the trial, and the third offered later, demonstrate an ambiguity in the tariff which could not be resolved by reference to other tariff provisions. Looking beyond the tariff to resolve the ambiguity, and keeping in mind that the ambiguity should be resolved against PLI, *Komatsu, Ltd. v. States Steamship Co.*, 674 F.2d 806, 811 (9th Cir.1982) (citing *Continental Can Co. v. United States*, 272 F.2d 312, 315 (2d Cir.1959)), the district court found evidence to indicate that the parties had intended, *Atchison, T. & S.F. Ry. Co. v. United States*, 216 Ct.Cl. 54, 572

F.2d 843, 849 (1978); *National Van Lines, Inc. v. United States,* 355 F.2d 326, 332 (7th Cir.1966), the full barge rate to apply only when the dimensions of the cargo matched· the capacity of the barge. First, PLI had charged LSB on that basis for the first seven shipments, an indication to the district court that even PLI recognized the applicability of the weight/measure rate. *See id.* at 333. Second, the agreement between LSB and PLI, which provided a relevant background for determining the intent of the tariff, supported LSB's interpretation. Finding that the parties had intended the "Full LASH Barges" rate to apply only when the barges carried 500 or 550 cubic meters of machinery, a finding entitled to our deference, Fed.R.Civ.P. 52(a), the district court did not err in concluding that LSB had been overcharged and awarding LSB appropriate recovery.

Where as here, loading is to be done by the shipper, the district court's interpretation of the tariff places the carrier somewhat at the mercy of the shipper. Only a limited number of barges can be carried aboard a ship. If the shipper decides to load only 100 cubic meters of machinery in each barge, the ship may be required to cross the Atlantic with only a small percentage of its possible payload. On the other hand, the district court's interpretation best satisfies the requirement for clearly defined tariff rates. *See* 46 C.F.R. § 536.6. A rate for "effectively full" barges would make it difficult to forecast the cost of shipping cargo and would lead to disagreements as to when a barge had been loaded to its "effective" capacity. Moreover, such an uncertain rate basis might frustrate enforcement of the anti-discrimination tariff laws as they apply to LASH shipments. *See Gilbert Imported Hardwoods, Inc. v. 245 Packages of Guatambu Squares,* 508 F.2d 1116, 1122 (5th Cir.1975).

The judgment of the district court is affirmed.