997 A.2d 298 (2010)
414 N.J. Super. 42
NEW JERSEY HOSPICE AND PALLIATIVE CARE ORGANIZATION, Appellant,
v.
John GUHL, Director of the Division of Medical Assistance and Health Services, Department of Human Services and Jennifer Velez, Commissioner of Human Services, Respondents.
DOCKET NO. A-5548-08T2.
Superior Court of New Jersey, Appellate Division.
Argued May 11, 2010.
Decided July 8, 2010.
*300 Ivan J. Punchatz, argued the cause for appellant (Buchanan, Ingersoll & Rooney, attorneys; Mr. Punchatz and Brian N. Rath, Princeton, of counsel and on the briefs).
Julie Hubbs, Deputy Attorney General, argued the cause for respondents (Paula T. Dow, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Ms. Hubbs, on the brief).
Before Judges SKILLMAN, FUENTES and GILROY.
The opinion of the court was delivered by
SKILLMAN, P.J.A.D.
This appeal involves a challenge to the validity of a regulation adopted by respondent Division of Medical Assistance and Health Services (DMAHS), which established the method of calculation of the reimbursement rate paid to hospice providers for room and board for Medicaid recipients who reside in nursing facilities, on the ground that this method violates a provision of the federal statute governing the Medicaid program. We conclude that the regulation, which is reflected in the State Medicaid plan approved by the federal agency responsible for monitoring state compliance with the federal Medicaid statute, constitutes a permissible construction of the federal statute and therefore is valid.
The procedural route by which this challenge to the regulation comes before us is somewhat unusual. The regulation, which is N.J.A.C. 10:53A-4.2(c)(1)(i), was originally adopted by DMAHS in 1992. 24 N.J.R. 4036(a), 4045 (Oct. 9, 1992). In its original form, the regulation stated in pertinent part:
The room and board rate is calculated at 95 percent of the highest approved Medicaid NF [nursing facility] per diem rate (institutionally specific) effective at the time services are provided, and excluding retroactive rate adjustments, retroactive add-ons and special program rates.[1]
In 2008, DMAHS added another sentence to the regulation, which states:
The "approved Medicaid NF per diem rate effective at the time services are provided," means the rate that was effective for the date of service, and shall not include any subsequent retroactive rate adjustments made between the date of service and the date of claim submission.
[40 N.J.R. 4578(a), 4580 (July 9, 2008).]
Following adoption of N.J.A.C. 10:53A-4.2(c)(1)(i), the State Medicaid plans submitted to and approved by the Center for Medicare and Medicaid Services (CMS), in the United States Department of Health *301 and Human Services (HHS), specifically indicated, in conformity with this regulation, that retroactive adjustments in the nursing facility reimbursement rate would be excluded in the calculation of the hospice room and board reimbursement rate:
The hospice rate is the lesser of the NF [nursing facility] rate for the date of service at the time the claim is adjudicated or the NF rate billed by the hospice. Retroactive rate adjustments, retroactive add-ons and special program rates are excluded.

[Emphasis added.]
Even though N.J.A.C. 10:53A-4.2(c)(1)(i) and the State Medicaid plans approved by CMS expressly stated that retroactive adjustments in the Medicaid reimbursement rate for nursing facilities would be excluded in calculating Medicaid payments for room and board to hospice providers, the fiscal intermediary DMAHS uses in administering the Medicaid program, called Unisys, had included those retroactive rate adjustments in its payments to hospice providers since at least 2001. DMAHS became aware of this practice sometime in 2008. As a result, DMAHS instructed Unisys to make future payments in conformity with N.J.A.C. 10:53A-4.2(c)(1)(i) and the State Medicaid plan. In addition, DMAHS undertook efforts to recoup the amounts DMAHS claimed had been overpaid to hospice providers since 2001 by making deductions from future payments.
Appellant New Jersey Hospice and Palliative Care Organization (New Jersey Hospice), a nonprofit association of forty-six New Jersey hospice and palliative care providers, sent a letter to the Director of DMAHS objecting to these deductions. The Director responded by a letter dated June 16, 2009, which rejected New Jersey Hospice's objections, stating in part:
[S]ome of the hospice room and board claims for service dates beginning January 1, 2001 through July 13, 2008 were incorrectly priced resulting in either overpayments or underpayments to the hospice providers. The basis of the pricing used for the original claim payments was not consistent with the New Jersey Medicaid state plan amendment and regulations. The DMAHS fiscal agent, Unisys, made modifications to the payment system to reflect the rate methodology contained within the state plan amendment and regulations.
New Jersey Hospice filed a notice of appeal from this letter, which it treated as final agency action.
DMAHS filed a motion to dismiss the appeal on the grounds that New Jersey Hospice lacks standing to challenge the validity of N.J.A.C. 10:53A-4.2(c)(1)(i) and that the Director of DMAHS's June 16, 2009 letter rejecting New Jersey Hospice's objections to DMAHS's recovery of alleged overpayments to hospice providers since 2001 is not an appealable final agency action. We reserved ruling on this motion pending consideration of the merits of the appeal.
We conclude that New Jersey Hospice has standing to pursue this appeal and that, although characterized as an appeal from the June 16, 2009 letter, this is actually a challenge to the validity of N.J.A.C. 10:53A-4.2(c)(1)(i) and the part of the State Medicaid plan reflecting this regulation, which is appealable final agency action. However, we reject New Jersey Hospice's challenge to the validity of N.J.A.C. 10:53A-4.2(c)(1)(i).

I.
It is firmly established in this State that "an association of individuals who allegedly have suffered financial harm as a result of agency action has standing to assert a claim on their behalf." Med. Soc. *302 of N.J. v. Bakke, 383 N.J.Super. 498, 504, 892 A.2d 728 (App.Div.2006). All that is required for an association to assert a claim on its members' behalf is a common economic interest in the challenged action. See Crescent Park Tenants Ass'n v. Realty Equities Corp. of N.Y., 58 N.J. 98, 107-12, 275 A.2d 433 (1971).
New Jersey Hospice is an association of forty-six hospice and palliative care providers. This appeal is limited to a challenge to the validity of N.J.A.C. 10:53A-4.2(c)(1)(i) and the part of the State Medicaid plan reflecting this regulation. New Jersey Hospice claims that the regulation has had an adverse economic effect upon all of its members. New Jersey Hospice does not seek through this appeal to challenge any action by DMAHS that affects only individual members.[2] Therefore, New Jersey Hospice has standing to pursue this appeal on its members' behalf.

II.
We also reject DMAHS's argument that this appeal should be dismissed because the June 16, 2009 letter from the Director of DMAHS rejecting New Jersey Hospice's objections to the DMAHS plan to recoup alleged overpayments to hospice providers is not appealable final agency action. This argument has superficial plausibility only because New Jersey Hospice has characterized its appeal as a challenge to the June 16th letter rather than as a challenge to N.J.A.C. 10:53A-4.2(c)(1)(i) and the part of the State Medicaid plan that reflects this regulation. New Jersey Hospice apparently adopted this strategy due to a concern that a challenge to the regulation would be considered untimely. However, such a concern is unwarranted.
Unlike quasi-judicial actions, "there is ... no time limit on a direct challenge to the substantive validity of an agency rule or regulation." Pressler, Current N.J. Court Rules, comment 3.1 on R. 2:4-1(b) (2010); see Nw. Covenant Med. Ctr. v. Fishman, 167 N.J. 123, 135, 770 A.2d 233 (2001) ("[T]he forty-five day rule applies only to an agency's quasi-judicial decisions that adjudicate the rights of a particular individual."); Bergen Pines County Hosp. v. N.J. Dep't of Human Servs., 96 N.J. 456, 471 n. 10, 476 A.2d 784 (1984) ("Generally the 45-day time limitation does not apply to an attack on the validity of a rule."); In re Six Month Extension of N.J.A.C. 5:91-1, 372 N.J.Super. 61, 87, 855 A.2d 582 (App.Div.2004) ("The forty-five-day time limit on appeals from final decisions of state administrative agencies does not generally apply to challenges to the validity of agency regulations[.]"), certif. denied, 182 N.J. 630, 868 A.2d 1033 (2005).
Although New Jersey Hospice characterized its appeal as a challenge to the June 16th letter, its arguments are directed solely at the validity of N.J.A.C. 10:53A-4.2(c)(1)(i) and the part of the State Medicaid plan reflecting this regulation. New Jersey Hospice does not present any argument regarding the application of the regulation to individual hospice providers or DMAHS's policy of retroactive enforcement of the regulation described in the June 16th letter. New Jersey Hospice does not argue, for example, that even if N.J.A.C. 10:53A-4.2(c)(1)(i) is valid, DMAHS lacks authority to seek recovery of alleged overpayments since 2001. Therefore, we conclude this appeal is solely a facial challenge to the validity of N.J.A.C. 10:53A-4.2(c)(1)(i) and the part of the State Medicaid plan reflecting this regulation, *303 which is appealable final agency action.

III.
We turn to the merits of New Jersey Hospice's challenge to the validity of N.J.A.C. 10:53A-4.2(c)(1)(i).
Any state "that choose[s] to participate [in the Medicaid program is] required to comply with Title XIX of the Social Security Act, and the regulations adopted by the Secretary of Health and Human Services." Mistrick v. Div. of Med. Assistance & Health Servs., 154 N.J. 158, 166, 712 A.2d 188 (1998). The primary means by which CMS, acting on behalf of the Secretary of HHS, determines whether a state is administering its Medicaid program in conformity with the federal statute and regulations is by review of the state's Medicaid plan. See 42 U.S.C.A. §§ 1396a(a), 1396a(b). One of the required components of such a plan is methodologies for calculating rates of payment for reimbursing hospital and nursing facilities that provide services to Medicaid patients. 42 U.S.C.A. § 1396a(a)(13)(A).
N.J.A.C. 10:53A-4.2(c)(1)(i) sets forth the method for calculating the rate of payment to hospice providers for the room and board they must reimburse nursing facilities for Medicaid patients. In its current form, this regulation provides in pertinent part:
The room and board rate is calculated at 95 percent of the approved Medicaid NF [nursing facility] per diem rate (institutionally specific) effective at the time services are provided, and excluding retroactive rate adjustments, retroactive add-ons and special program rates for private and county nursing facilities. The "approved Medicaid NF [nursing facility] per diem rate effective at the time services are provided," means the rate that was effective for the date of service, and shall not include any subsequent retroactive rate adjustments made between the date of service and the date of claim submission.
New Jersey Hospice contends that this regulation is inconsistent with the clear language of the governing subsection of the federal Medicaid statute, 42 U.S.C.A. § 1396a(a)(13)(B), which provides in pertinent part:
[I]n the case of hospice care which is furnished to an individual who is a resident of a nursing facility ..., and who would be eligible under the plan for nursing facility services ... if he had not elected to receive hospice care, there shall be paid an additional amount, to take into account the room and board furnished by the facility, equal to at least 95 percent of the rate that would have been paid by the State under the plan for facility services in that facility for that individual.

[42 U.S.C.A. § 1396a(a)(13)(B) (emphasis added).]
New Jersey Hospice contends that 42 U.S.C.A. § 1396a(a)(13)(B) requires a state Medicaid agency to pay a hospice provider at least 95% of the "actual final rate" for room and board "otherwise paid to the nursing facility" in which a hospice patient resides rather than only 95% of the "pre-adjusted... interim rate" that was in effect when the room and board was provided. New Jersey Hospice argues that the rate that eventually "would have been paid by the State [for room and board] under the plan for facility services in that [nursing] facility," 42 U.S.C.A. § 1396a(a)(13)(B), is the "actual final rate."
On the other hand, DMAHS argues that this rate is the "interim rate in effect on the date [the] service" was provided. In support of this argument, DMAHS points out that the amount a hospice provider *304 pays a nursing facility for room and board for a hospice patient is determined by contract between the hospice provider and the nursing facility. Since such a contract is entered into before the service is provided, DMAHS argues that the contract rate must be established in light of the nursing facility's interim rate in effect at that time, and therefore, the payment to the hospice provider of an upward adjustment in the nursing facility's final rate would result in a windfall.
DMAHS's interpretation of 42 U.S.C.A. § 1396a(a)(13)(B) is reflected not only in N.J.A.C. 10:53A-4.2(c)(1)(i), which was originally adopted in 1992, but also in the State Medicaid plans submitted to and approved by CMS. Such approval is entitled to "Chevron deference." Harris v. Olszewski, 442 F.3d 456, 467-68 (6th Cir. 2006); S.D. ex rel. Dickson v. Hood, 391 F.3d 581, 595-96 (5th Cir.2004); Pharm. Research & Mfrs. of Am. v. Thompson, 362 F.3d 817, 821-22 (D.C.Cir.2004); Perry v. Dowling, 95 F.3d 231, 235-38 (2d Cir.1996); Georgia Dep't of Med. Assistance ex rel. Toal v. Shalala, 8 F.3d 1565, 1567-68, 1571-73 (11th Cir.1993); see also West Virginia v. Thompson, 475 F.3d 204, 212-14 (4th Cir.2007); Alaska Dep't of Health & Soc. Servs. v. Ctrs. for Medicare & Medicaid Servs., 424 F.3d 931, 938-39 (9th Cir.2005); Bergen Pines County Hosp., supra, 96 N.J. at 478, 476 A.2d 784.
When federal agency action is subject to Chevron deference, a court is required to engage in a two-step analysis: first, it must decide whether Congress has "unambiguously expressed [its] intent" regarding "the precise question at issue," and second, in the absence of such an unambiguous expression of congressional intent, it must decide whether the federal agency's answer to the question constitutes a "permissible construction of the statute." Chevron U.S.A. Inc. v. NRDC, 467 U.S. 837, 842-43, 104 S.Ct. 2778, 2781-82, 81 L.Ed.2d 694, 702-03 (1984).
We conclude that Congress has not "unambiguously expressed its intent" with respect to the "precise question" of interpretation of 42 U.S.C.A. § 1396a(a)(13)(B) addressed by N.J.A.C. 10:53A-4.2(c)(1)(i) and that the answer to the question reflected in the State plan approved by CMS is a "permissible construction of the statute." 42 U.S.C.A. § 1396a(a)(13)(B) unambiguously requires DMAHS to pay a hospice provider "an additional amount, to take into account the room and board furnished by the [nursing] facility, equal to at least 95 percent of the rate that would have been paid by the State under the plan for facility services in that facility for that individual." However, the federal statute does not address the precise temporal question addressed by N.J.A.C. 10:53A-4.2(c)(1)(i), which is whether "the rate that would have been paid by the State under the plan for facility services in that [nursing] facility" is the interim rate in effect when the contract for those services was entered into or the final rate ultimately established by DMAHS after the service was provided.
Moreover, DMAHS has presented a plausible rationale for limiting reimbursement to the hospice provider to the rate that would have been paid to the nursing facility when the service was provided: that is, that the hospice provider would have contracted with the nursing facility in light of that interim rate because that was the rate in effect at the time. Therefore, DMAHS's construction of 42 U.S.C.A. § 1396a(a)(13)(B) reflected in New Jersey's Medicaid plan approved by CMS constitutes a "permissible construction" of the federal statute, to which we are required to defer under the Chevron standard.
*305 New Jersey Hospice relies upon a section of the CMS State Medicaid Manual and an opinion of the Inspector General of HHS, which it claims supports its interpretation of 42 U.S.C.A. § 1396a(a)(13)(B). If there were a conflict between the interpretation of the federal statute in those documents and the one set forth in the State plan approved by CMS, we would follow the interpretation reflected in the approved State plan because the CMS State Medicaid Manual and other informal expressions of opinions by officials in HHS, such as the Inspector General, are not entitled to the Chevron deference extended to CMS's approval of a state Medicaid plan. See Wong v. Doar, 571 F.3d 247, 258-59 (2d Cir.2009); S.D., supra, 391 F.3d at 590 n. 6; Ind. Family & Soc. Servs. Admin. v. Thompson, 286 F.3d 476, 480 (7th Cir.2002). In any event, there is no conflict, because the section of the State Medicaid Manual and the Inspector General's opinion relied upon by New Jersey Hospice, like 42 U.S.C.A. § 1396a(a)(13)(B) itself, do not expressly address the question whether "the rate that would have been paid" means the initial prospective rate or the retroactively adjusted final rate.[3] Therefore, those documents do not affect our conclusion that, extending Chevron deference to CMS's approval of the State Medicaid plan reflecting the interpretation of 42 U.S.C.A. § 1396a(a)(13)(B) set forth in N.J.A.C. 10:53A-4.2(c)(1)(i), the regulation must be upheld.
We add one final note. Our affirmance of the validity of N.J.A.C. 10:53A-4.2(c)(1)(i) is predicated upon CMS's approval of the State Medicaid plan reflecting this regulation. Counsel for New Jersey Hospice advised us at oral argument that he had undertaken efforts to secure reconsideration by CMS of its approval of this part of the State plan. Because this decision rests on our obligation to extend Chevron deference to CMS's approval of the State plan rather than our conclusion that N.J.A.C. 10:53A-4.2(c)(1)(i) represents the only reasonable, or even the most persuasive, interpretation of 42 U.S.C.A. § 1396a(a)(13)(B), it does not foreclose New Jersey Hospice from continuing to pursue reconsideration by CMS of its approval of this part of the State plan.
In light of our affirmance of the validity of N.J.A.C. 10:53A-4.2(c)(1)(i), there is no need to address New Jersey Hospice's argument that its challenge to this regulation and the approved State Medicaid plan is maintainable under 42 U.S.C.A. § 1983.
Affirmed.
NOTES
[1] DMAHS made minor changes in the wording of the regulation in 2003.
[2] We note that three individual members of the association have filed administrative appeals of DMAHS's administrative action seeking recovery of alleged overpayments.
[3] The relevant section of the manual states:

The additional amount paid to the hospice on behalf of an individual residing in a nursing facility must equal at least 95 percent of the per diem rate that you would have paid to the nursing facility for that individual in that facility under your State plan.
[CMS, State Medicaid Manual § 4308.2.]
Similarly, the Inspector General's opinion states:
By law, the state's payment to the hospice must be no less than 95 percent of the state's Medicaid daily nursing facility rate. The "daily nursing facility rate" is the rate the state would otherwise have paid the nursing facility for the resident, had the resident not elected hospice care.
[U.S. Department of Health and Human Services, Office of Inspector General, OIG Advisory Opinion No. 01-20, at 3 (November 21, 2001) (footnote omitted).]